**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**TRI-STATE TRUCK CENTER, INC.**
**d/b/a TRI-STATE LEASING**                                                        **PLAINTIFF**

**VS.**                                        CIVIL ACTION NO. 3:23-cv-410-DPJ-FKB

**SAFE WAY TRANSPORT, LLC,**
**KH ENTERPRISE LLC,**
**KINA SANDERS,**
**KENYASCICUS SANDERS,**
**JOHN DOES 1-100, and**
**ABC CORPORATIONS 1-100**                                            **DEFENDANTS**

**COMPLAINT**

Plaintiff Tri-State Truck Center, Inc. d/b/a Tri-State Leasing ("**TSL**") files this Complaint against Safe Way Transport, LLC ("**Safeway**") KH Enterprise LLC ("**KH Enterprise**"), Kina Sanders ("**Kina**"), Kenyascicus Sanders ("**Ken**"), John Does-100, and ABC Corporations 1-100 (collectively, "**Defendants**"), and in support, states the following:

**PARTIES**

1.      Plaintiff TSL is a Tennessee corporation with its principal place of business located in Memphis, Tennessee.

2.      Defendant Safeway is a Mississippi limited liability company whose sole member is Kina Sanders, a Mississippi resident. Safeway may be served with process through its registered agent, Tina Henry, at 907 South State Street, Jackson, Mississippi 39201.

3.      Defendant KH Enterprise is a Mississippi limited liability company whose sole member is Ken Sanders, a Mississippi resident. KH Enterprise may be served with process through its registered agent, Tina Henry, at 907 South State Street, Jackson, Mississippi 39201.

4.     Defendant Kina Sanders is an adult resident citizen of Madison County, Mississippi who resides at 539 Twin Cedars Drive, Madison, Mississippi 39110. Kina may be served with process at her residence or at 907 South State Street, Jackson, Mississippi 39201.

5.     Defendant Ken Sanders is an adult resident citizen of Madison County, Mississippi who resides at 539 Twin Cedars Drive, Madison, Mississippi 39110. Ken may be served with process at his residence or at 907 South State Street, Jackson, Mississippi 39201.

6.     The John Doe defendants are individuals, unknown at this time, who may have received fraudulent transfers from Safeway, KH Enterprise, Kina, and/or Ken, who may have participated in or facilitated the wrongful conduct described in this complaint, or may be liable for Safeway's debts under theories of successor liability, alter ego, de facto merger, veil piercing, and/or other theories.

7.     The ABC Corporation defendants are corporate entities, unknown at this time, who may have received fraudulent transfers from Safeway, KH Enterprise, Kina, and/or Ken, who may have participated in or facilitated the wrongful conduct described in this complaint, or may be liable for Safeway's debts under theories of successor liability, alter ego, de facto merger, veil piercing, and/or other theories

## JURISDICTION AND VENUE

8.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of the State of Tennessee and all Defendants are citizens of the State of Mississippi, and the amount in controversy exceeds $75,000.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all Defendants reside in this district.

## FACTS

### A.    Safeway's Indebtedness for the Leased Vehicles

10.    TSL is an owner and lessor of commercial trucks and trailers (generally, "**Vehicles**").

11.    During the relevant time period, Safeway was a trucking company that leased Vehicles from TSL and took Vehicles to TSL for repairs and maintenance.

12.    On March 22, 2019, TSL, as lessor, and Safeway, as lessee, entered into a Mack Leasing System Full Service Lease Agreement ("**Master Lease**") under which Safeway agreed to lease from TSL the Vehicles and trailers "described on Schedule A and on such additional Schedule(s) A as from time to time hereafter may be executed by Lessor and Customer." (**Ex. 1, Master Lease, Schedule A, and Amendments**, ¶ 1). On that same day, Safeway agreed to a Schedule A for the lease of two vehicles and two trailers at the rates set forth in Schedule A, as amended. The four vehicles/trailers are identified as Vehicles 2859, 2860, 2861, and 2862 ("**Leased Vehicles**"). Under the terms of the Master Lease, Safeway agreed that invoices not paid within ten days from the invoice date would accrue late charges at the rate of 1.5% per month. (*Id.* ¶ 2).

13.    Following the execution of the Master Lease, TSL leased Vehicles to Safeway and invoiced Safeway pursuant to the Master Lease. However, Safeway has indisputably failed to pay TSL's invoices. As a result, as of June 27, 2023, Safeway is indebted to TSL in the principal amount of $29,022.27 for unpaid invoices with respect to the Leased Vehicles, repairs, and other invoices predating the Master Lease, as well as contractual late fees in the amount of $11,415.88, for a total indebtedness of $40,438.15 with respect to the Leased Vehicles (as of June 27, 2023).

**B.    Safeway's Indebtedness for the Rented Vehicles**

14.    Pursuant to Paragraph 10 of the Master Lease, Safeway could also obtain short-term rentals of additional Vehicles by executing Commercial Rental Agreements. Such short-term rentals would be governed by the terms of the Master Lease, as well as the Commercial Rental Agreements.

15.    On November 17, 2021, TSL and Safeway entered into a Commercial Rental Agreement, whereby TSL rented to Safeway a 2017 Volvo VNL780 tractor-trailer identified as "**Vehicle 2552.**" (**Ex. 2, Vehicle 2552 Commercial Rental Agreement**).

16.    On March 2, 2022, TSL and Safeway entered into a Commercial Rental Agreement, whereby TSL rented to Safeway a 2017 CXU613 Mack tractor-trailer identified as "**Vehicle 2583**." (**Ex. 3, Vehicle 2583 Commercial Rental Agreement**).

17.    Collectively, Vehicle 2552 and Vehicle 2583 shall be referred to as the "**Rented Vehicles**."

18.    Under the Commercial Rental Agreements, Safeway agreed to pay late payment charges at the rate of 18% per annum for any invoices not paid within seven days. (*Id.* ¶ 7).

19.    Following the execution of the Commercial Rental Agreements, TSL rented the Rented Vehicles to Safeway and invoiced Safeway for the same. However, Safeway has indisputably failed to pay the invoices with respect to the Rented Vehicles. Accordingly, Safeway is indebted to TSL in the principal amount of $40,547.79 for unpaid invoices with respect to the Rented Vehicles, as well as contractual late fees in the amount of $9,296.73 (as of June 27, 2023), for a total indebtedness of $49,844.52 with respect to the Rented Vehicles.

### C.    Safeway's Indebtedness for Damages to the Vehicles

20.    Under the Master Lease, Safeway agreed that it would be responsible for any damage it caused to the Leased or Rented Vehicles. (Ex. 1, ¶¶ 2, 12, 20).

21.    Safeway returned Vehicles 2859, 2860, and 2552 in severely damaged conditions. The cost to repair Vehicles 2859, 2860, and 2552 was $50,478.91.

22.    TSL invoiced Safeway for the costs of the repairs; however, Safeway has indisputably failed to pay the invoices.

23.    Accordingly, Safeway is indebted to TSL in the principal amount of $50,478.91 for damages it caused to the Vehicles, as well as contractual late fees in the amount of $9,835.40 (as of June 27, 2023), for a total indebtedness of $60,314.31 with respect to damages caused to the Vehicles.

### D.    Safeway's Indemnity Indebtedness

24.    On June 8, 2022, Plaintiff Nancy Berenice Castaneda ("**Castaneda**") filed a complaint against Safeway, Kenny Sanders, and TSL in the Superior Court of Ventura County, California, No. 56-2022-00566801-CU-PA-VTA ("**California Lawsuit**"). (**Ex. 4, California Lawsuit**).

25.    TSL was served with the California Lawsuit on January 23, 2023.

26.    According to the complaint, on June 25, 2020, Castaneda was involved in traffic accident alleged to have been caused by Safeway while driving a vehicle rented from TSL pursuant to a Commercial Rental Agreement, specifically Vehicle 2855.  (**Ex. 5, Vehicle 2855 Commercial Rental Agreement**).

27.    Paragraph 11 of the Master Lease provides, in relevant part:

**INDEMNIFICATION**. Customer hereby agrees to defend, hold harmless and indemnify Lessor, its directors, officers, employees, agents, insurers, successors

and assigns from and against any and all claims, demands, actions, causes of action, expenses, and liabilities whatsoever for injury or death to persons, or loss or damage to Property, or any other loss or damages sustained by any person arising out of or in connection with the ownership, use, or operation of the Property or Customer's breach of this Lease Agreement.

… Customer agrees to take upon itself the settlement of all such claims and the defense of any legal proceeding brought to enforce such claim or claims, and to pay all judgments entered in such legal proceeding and all costs, attorneys' fees or other expenses….

The provisions of the foregoing indemnity do not include any gross negligence or willful misconduct by Lessor, its agents or employees, but are otherwise absolute and unconditional and shall continue in full force and effect regardless of where, how or by whom any Property is operated, and notwithstanding any insurance coverage that Customer may carry or the termination or cancellation of this Lease Agreement. The foregoing provisions include, without limitation, liability and claims arising by reason of negligence, strict liability, breach of warranty, or defect in manufacture or maintenance.

Additionally, Paragraph 12 of the Master Lease states:

Notwithstanding the above, and unless otherwise designated on Schedule A, Customer, at its sole cost and expense, shall, during the term of the Lease Agreement, procure and maintain in full force and effect public liability insurance policies written by non-assessable insurance companies approved by Lessor and authorized to transact business in each state where the Property, and any substitute or replacement Property, is to be operated, protecting the interests of Lessor, the funding source, and Customer with respect to their liability for injury to or death of persons and damage to or loss of use of property resulting from the ownership, use, or operation of the Property, with Lessor and its secured party assignee, if any, as additional insured's. Such public liability insurance policies as to the Property shall have limits of not less than the amounts specified on Schedule A.

28.    Further, under the Commercial Rental Agreements, Safeway agreed to pay for, indemnify, and hold harmless TSL from any claims asserted against TSL due to Safeway's operation of TSL's vehicles. (Exs. 2-3, 5 ¶ 6). Likewise, under the Commercial Rental Agreements, Safeway agreed to maintain a liability insurance policy naming TSL as an additional insured. (*Id.*).

29.     Notwithstanding its obligations under the Master Lease and Commercial Rental Agreements, Safeway failed to maintain a liability insurance policy naming TSL as an additional insured with respect to Vehicle 2855 – the vehicle Safeway was driving during the automobile accident with Castaneda – and Safeway has refused to defend, indemnity, and hold TSL harmless from the claims asserted by Castaneda in the California Lawsuit. These failures and refusals constitute breaches of the Master Lease and Commercial Rental Agreements, and TSL is entitled to recover from Safeway all costs, fees, and expenses incurred in defending and/or settling the claims asserted in the California Lawsuit, and to the extent Castaneda is awarded damages against TSL, TSL is entitled to recover such damages from Safeway.

**E.     Safeway is Liable for TSL's Costs and Attorneys' Fees Incurred Due to Safeway's Breaches of the Master Lease and Commercial Rental Agreements.**

30.     Under the Master Lease, Safeway agreed that "[i]n the event that Lessor shall be required to resort to legal process in order to take possession of the Property or otherwise enforce its rights hereunder, including the collection of amounts due from Customer, Customer shall be liable to Lessor for the costs thereof, including reasonable attorneys' fees." (Ex. 1 ¶ 20).

31.     Under the Commercial Rental Agreements, Safeway likewise agreed that it would be liable for all of TSL's costs and attorneys' fees incurred in collecting amounts owed, regaining possession of the Rented Vehicles, or in enforcing its rights under the parties' agreement. (Exs. 2-3, 5 ¶¶ 6(I) and 7).

32.     In addition to its breaches for failing to pay invoices when due, damaging the Rented Vehicles, failing to maintain a liability insurance policy that would cover TSL for the claims asserted in the California Lawsuit, and failing to defend and indemnify TSL against the claims asserted in the California Lawsuit, Safeway further breached the Master Lease by failing to return the Rented Vehicles upon demand.

33.     Specifically, on March 14, 2022, TSL wrote Safeway demanding return of the Rented Vehicles by March 22, 2022. (**Ex. 6, March 14, 2022 Termination Letter**).

34.     However, Safeway failed to return the Rented Vehicles, and as a result, TSL was forced to file suit in Hinds County Court, Cause No. 1:22-cv-745-LCS, seeking to replevin the Rented Vehicles and recover damages.

35.     Therefore, TSL is entitled to recover its reasonable costs and attorneys' fees incurred as a result of Safeway's breaches, including, but not limited to, the costs and fees incurred by TSL associated with the Hinds County litigation, Safeway's bankruptcy case (discussed below), and this lawsuit.

**F.     Safeway's Bankruptcy and KH Enterprise**

36.     As noted previously, TSL filed a lawsuit for replevin and damages against Safeway in Hinds County Court. Thereafter, TSL filed a summary judgment motion and set it for hearing on January 19, 2023. However, before the summary judgment motion could be heard, Safeway filed for Chapter 7 bankruptcy on January 17, 2023.

37.     When Safeway filed for bankruptcy several days before the hearing on TSL's summary judgment motion, TSL knew that Ken and Kina Sanders had no intention of getting out of the trucking business. Rather, it was TSL's strong suspicion that Ken and Kina Sanders intended to simply start a new company and otherwise continue business as usual, but without having to pay the debts Safeway accumulated.

38.     Accordingly, TSL's counsel searched the Mississippi Secretary of State's website for corporate entities where Kina or Ken Sanders were officers or directors and quickly determined that KH Enterprise could be the new company.

39.    The following information appeared on the Secretary of State's website with respect to Safeway:

a.  Safeway's principal place of business is located at 907 South State Street, Jackson, Mississippi.

b.  Safeway's Registered Agent is Tina Henry. Prior to Tina Henry, Safeway's Registered Agent was Helen Banks, the mother of Kina Sanders.

c.  Safeway's Manager is Kina Sanders.

d.  Safeway's email address is accounting@safeway-transport.com.

e.  The nature of Safeway's business is "General Freight Trucking, Long-Distance, Truckload."

40.    In comparison, the following information appeared on the Mississippi Secretary of State's website regarding KH Enterprise:

a.  KH Enterprise's principal place of business is 907 South State Street, Jackson, Mississippi (same as Safeway).

b.  KH Enterprise's Registered Agent is Tina Henry. Prior to Tina Henry, KH Enterprise's Registered Agent was Helen Banks (same as Safeway).

c.  On February 15, 2023, KH Enterprise filed a Certificate of Amendment naming Kina Sanders as a Manager/Member and Ken Sanders as Manager, Member, and President.

d.  KH Enterprise's email address is thenry@khenterprise-transport.com – containing a dash similar to the Safeway email address.

e.  The nature of KH Enterprise's business is "General Freight Trucking, Local" and "Specialized Freight (except Used Goods) Trucking, Local."

f.  Tina Henry's email signature block includes both Safeway and KH Enterprise.

41.    For this reason, TSL filed motions for the Rule 2004 examinations of Safeway and KH Enterprise, requesting that the Court order Safeway and KH Enterprise to produce documents and testify under oath. (**Ex. 7, Motions for Rule 2004 Examinations**). The bankruptcy court

entered orders granting both motions. (**Ex. 8, Orders Granting Motions for Rule 2004 Examinations**).

42.     When Safeway and KH Enterprise failed to timely produce documents they were ordered to produce, TSL served subpoenas on Wells Fargo, Trustmark National Bank, BankPlus, and Safeway's CPA firm – Silas Simmons; however, TSL did not receive the subpoenaed documents until after Safeway's April 12, 2023 deposition.

43.     This discovery confirmed, without question, that KH Enterprise is Safeway's successor and liable for Safeway's debts, that KH Enterprise, Kina Sanders, and Ken Sanders are the recipients of fraudulent transfers from Safeway, and that Kina and Ken Sanders, as the individuals responsible for such wrongful conduct, are individually liable for Safeway's debts. Specifically, discovery during the bankruptcy case revealed the following facts:

**G.     KH Enterprise and Safeway have the same address, the same  registered agent, are controlled by the same people, operate the same line of business, and once Safeway ceased doing business, Safeway's drivers became KH Enterprise's drivers and Safeway's customers became KH Enterprise customers.**

44.     Kina testified that she is the sole member of Safeway, and her tax returns and information on file with the Secretary of State's office show that she is a Manager/Member of KH Enterprise.

45.     Ken – Kina's husband – runs Safeway, and according to the Secretary of State's website, is the Manager, Member, and President of KH Enterprise.

46.     Both Ken and Kina Sanders are owners and authorized signers on Safeway's and KH Enterprise's bank accounts.

47.     Safeway and KH Enterprise operate out of the same location, have the same registered agent, and are in the same line of business. After Safeway ceased doing business, KH Enterprise employed truck drivers who had previously driven for Safeway, and KH Enterprise's

biggest customers – Tom Lange Co., Ashley Farms & Trucking, Truckers Exchange, and Ozark Truck Brokers – are all former Safeway customers. KH Enterprise did not do business with these customers until Safeway ceased doing business. Yet, Kina falsely testified that none of Safeway's drivers were driving for KH Enterprise.

48.    Although Kina Sanders testified that she had no involvement in KH Enterprise, which she said was owned by her husband – Ken Sanders – she claimed $103,944 of income from KH Enterprise on her most recent tax return, and on her tax return, represented that she materially participated in KH Enterprise's business operations.

49.    While Kina testified that she had never received any money from KH Enterprise, bank records showed that KH Enterprise paid her over $26,000 between December 1, 2022 and January 9, 2023.

50.    Ken Sanders told Ashley Farms & Trucking that Safeway was changing its name to KH Enterprise.

51.    KH Enterprise paid Safeway's legal expenses in the bankruptcy case.

**H.    Fraudulent Transfers, Treating Corporate Assets as Personal Assets, and Failing to Follow Corporate Formalities**

52.    Kina/Ken Sanders withdrew $18,350 in cash from Safeway Wells Fargo Account 4277 between December 1, 2022 and December 21, 2022, and Kina testified that the funds were used for personal expenses. None of these insider transfers were disclosed on Safeway's bankruptcy schedules.

53.    Kina/Ken Sanders withdrew $5,000 in cash from Safeway's BankPlus account a week before Safeway's bankruptcy filing and withdrew an additional $4,800 in cash seven days post-petition. Again, neither of these transfers were disclosed on Safeway's bankruptcy schedules.

54.    On December 27, 2022 – several weeks before Safeway's January 17, 2023 bankruptcy filing and days before KH Enterprise made the first of two payments to Safeway's bankruptcy counsel on January 2, 2023 – Kina Sanders made a $55,000 online transfer from Safeway Wells Fargo Account No. 4277 to Safeway Wells Fargo Account No. 4759. That same day, Kina purchased a $53,000 cashier's check payable to KH Enterprise, which KH Enterprise deposited into its Trustmark account later that day. Despite this, Ms. Sanders provided knowingly false testimony that Safeway did not utilize online banking and that Safeway had never transferred any money to KH Enterprise. This $53,000 insider transfer was not disclosed on Safeway's bankruptcy schedules. As noted previously, Kina testified that her husband is the sole owner of KH Enterprise so Ken Sanders was fully aware of and participated in the transfer.

55.    Ken and Kina Sanders used Safeway funds to pay personal expenses in the months leading up to Safeway's bankruptcy filing, including school tuition, personal car loans, vacations, $3,700 monthly home mortgage payments, personal insurance, dining out, and spa visits, among other expenditures. None of these insider transfers were disclosed on Safeway's bankruptcy schedules.

56.    As reflected in Safeway's Wells Fargo bank statements in the months leading up to Safeway's bankruptcy filing and as admitted by Kina Sanders during Safeway's deposition, the Kina/Ken utilized Safeway funds to pay thousands of dollars of personal credit card debt. Kina testified that all payments to Citibank (the issuer of the personal credit card) appearing on Safeway's Wells Fargo bank statements were payments for personal expenses. None of these insider transfers were disclosed on Safeway's bankruptcy schedules.

57.    On March 3, 2023, KH Enterprise opened a checking account at BankPlus. That same day, Safeway transferred $1,311.54 to KH Enterprise, and on March 23 – several months

after Safeway's bankruptcy filing – Safeway transferred an additional $9,160 to KH Enterprise, which KH Enterprise deposited into its newly opened account at BankPlus.

58.    In Safeway's deposition, Kina testified that Safeway failed to maintain normal business records and follow corporate formalities.

I.    **Attempts to Lie, Hide, and Conceal**

59.    Safeway failed to produce the documents it was ordered to produce by the bankruptcy court. KH Enterprise produced no documents at all, despite the Court's 2004 order requiring KH to produce documents. KH Enterprise did not appear for its scheduled deposition on April 12, 2023. (**Ex. 9, Motion for Contempt (Safeway)**; **Ex. 10, Motion for Contempt (KH Enterprise)**).

60.    On information and belief, KH Enterprise is using the same equipment and vehicles formerly used by Safeway. However, Safeway and KH Enterprise, by failing to comply with the Court's 2004 orders, concealed the discovery of such facts.

61.    During Safeway's deposition, Kina testified that Safeway only maintained one checking account at Wells Fargo, Account No. 4277. When confronted about Wells Fargo Account 4759, Kina falsely testified it was a Miskelly's charge account. In fact, the account is a business checking account that Kina used to facilitate the $53,000 fraudulent transfer to KH Enterprise.

62.    *See Tri-State Truck Center, Inc.'s Motion to Reconsider Order Converting Case, or, Alternatively, to Dismiss Case* (Doc. 109), which outlines numerous false and inaccurate statements on Safeway's bankruptcy schedules, which reflect attempts to hide and conceal assets and fraudulent transfers. (**Ex. 11, Motion to Reconsider**). *See also* Exhibit 12, which identifies numerous assets not listed on Safeway's bankruptcy schedules.

63.     Although KH Enterprise paid Safeway's bankruptcy counsel, on its bankruptcy schedules, Safeway and its counsel represented that its bankruptcy counsel was paid by Safeway.

64.     In Safeway's deposition, Kina provided knowingly false testimony that Safeway did not enter into any agreements with factoring companies, thereby concealing discovery of Safeway's accounts receivable and assets.

65.     On May 26, 2023, following the hearings on TSL's Motions for Contempt and Motion to Reconsider, the Court ordered Safeway to correct the many inaccuracies appearing on its schedules on or before June 6, 2023. Additionally, the Court ordered Safeway and KH Enterprise to produce to TSL's counsel all documents ordered to be produced in the Court's orders granting TSL's Motions for 2004 Examinations on or before June 6, 2023. Further, the Court ordered KH Enterprise and Safeway – through Kina and Ken Sanders – to make themselves available for a 2004 examination on or before June 21, 2023. However, Safeway failed to correct its schedules to identify all of its assets and pre-petition transfers, and Safeway and KH Enterprise failed to produce the ordered documents or make themselves available for a deposition. As a result, the Court dismissed Safeway's bankruptcy case on June 7, 2023.

66.     TSL incorporates by reference Exhibits 5, 7, 8, 10-18, and 22-24 introduced into evidence at the above-referenced hearing as collective **Exhibit 12**.

## COUNT I: BREACH OF CONTRACT/TORTIOUS BREACH OF CONTRACT

67.     TSL incorporates by reference the allegations contained in the preceding paragraphs.

68.     The Master Lease and Commercial Rental Agreements constitute valid and binding contracts entered into between TSL and Safeway.

69.     Safeway breached the contracts by failing to pay invoices when due, by damaging the Vehicles, by failing to return the Rented Vehicles, by failing to maintain a liability insurance policy naming Safeway an additional insured with respect to Vehicle 2855 involved in the California accident, and by failing to defend and indemnify Safeway against the claims asserted in the California Lawsuit.

70.     As demonstrated above, Safeway not only breached its contracts, but did so tortuously, thereby entitling TSL to punitive damages.

71.     As a result of Safeway's breaches, TSL is entitled to recover the following damages:

   a.   Indebtedness for the Leased Vehicles: $40,438.15, plus contractual late fees at the rate of 18% per annum from June 27, 2023.

   b.   Indebtedness for the Rented Vehicles: $49,844.52, plus contractual late fees at the rate of 18% per annum from June 27, 2023.

   c.   Indebtedness for Damages to the Vehicles: $60,314.31, plus contractual late fees at the rate of 18% per annum from June 27, 2023.

   d.   Costs and Fees to which TSL is Entitled Under the Master Lease and Commercial Rental Agreements: TBD.

   e.   Any Damages Awarded Against TSL or Any Settlements Paid by TSL in the California Lawsuit: TBD.

   f.   Punitive Damages

### COUNT II: FRAUDULENT TRANSFERS

72.     TSL incorporates by reference the allegations contained in the preceding paragraphs.

73.     The transfers described above were made with the actual intent to hinder, delay, and defraud creditors, including TSL.

74.     The transfers described above were to insiders.

75.    Kina and Ken Sanders retained control of the transferred funds and assets following the transfers.

76.    No consideration was given in exchange for the transfers.

77.    Safeway, Kina Sanders, Ken Sanders, and KH Enterprise did not disclose these transfers to TSL's counsel or the bankruptcy court and actively sought to conceal these transfers from TSL's counsel and the bankruptcy court by providing false deposition testimony, filing inaccurate bankruptcy schedules, failing to produce documents the bankruptcy court ordered produced, and failing to appear for and/or truthfully answer deposition questions.

78.    All of the transfers were made after TSL filed suit against Safeway.

79.    The transfers were of substantially all of Safeway's assets.

80.    Safeway became insolvent as a result of the transfers as demonstrated by its Chapter 7 "no asset" bankruptcy filing and the fact that Safeway has done no business since November/December 2022.

81.    Further, pursuant to Miss. Code Ann. § 15-3-107(3), the transfers are constructively and presumptively fraudulent. *See RDS Real Estate, LLC v. Abrams Group Construction, LLC*, 2017 WL 278479 (S.D. Miss. Jan. 20, 2017).

82.    Kina Sanders, Ken Sanders, and KH Enterprise are jointly and severally liable to TSL for the value of the transferred assets and for Safeway's debts to TSL. *See Stanley v. Miss. State Pilots of Gulfport, Inc.*, 951 So. 2d 535 (Miss. 2007) (conveying a business to a new corporation in order to avoid a corporate obligation sufficient to find personal liability) (citing *Morris v. Macione*, 546 So. 2d 969 (Miss. 1989)).

83.    Pursuant to Miss. Code Ann. § 15-3-111 and Mississippi law, TSL requests that the Court:

a. Enter a judgment against all Defendants in an amount equal to Safeway's debt to TSL.

b. Award TSL punitive damages against Safeway, Kina Sanders, Ken Sanders, and KH Enterprise.

c. Require Safeway, Kina Sanders, Ken Sanders, KH Enterprise, and any other trucking entity in which Kina Sanders or Ken Sanders is an officer, director, member, or owner to submit to the Court and TSL's counsel monthly bank statements for all accounts in which Safeway, Kina Sanders, Ken Sanders, KH Enterprise, or any other trucking entity in which Kina Sanders or Ken Sanders is an officer, director, member, or owner, within three (3) business days of said statements being available, each month until this litigation is concluded.

d. Require Safeway, Kina Sanders, Ken Sanders, KH Enterprise, and any other trucking entity in which Kina Sanders or Ken Sanders is an officer, director, member, or owner to seek Court permission prior to transferring any cash or assets worth more than $2,500 until this litigation is concluded.

e. Require Safeway, Kina Sanders, Ken Sanders, KH Enterprise, any other trucking entity in which Kina Sanders or Ken Sanders is an officer, director, member, or owner to seek Court permission and immediately notify the Court of any transfers of assets or cash by Safeway, KH Enterprise, or any other trucking entity in which Kina Sanders or Ken Sanders is an officer, director, member, or owner to Kina Sanders, Ken Sanders, or any family member of Kina or Ken Sanders.

f. Require Safeway, Kina Sanders, Ken Sanders, KH Enterprise, and any other trucking entity in which Kina Sanders or Ken Sanders is an officer, director, member, or owner to identify any transfers described in (d)-(e) subsequent to the filing of this Complaint.

g. Attach and freeze all funds and assets transferred from Safeway to Kina/Ken Sanders, KH Enterprise, or any other trucking entity in which Kina Sanders or Ken Sanders is an officer, director, member, or owner until this litigation is concluded, and require Kina/Ken Sanders, KH Enterprise, and any other trucking entity in which Kina Sanders or Ken Sanders is an officer, director, member, or owner to deposit said funds into the registry of the Court until this litigation is concluded. The transferred funds include:

   i. The $53,000 transfer to KH Enterprise;

   ii. The $10,471.54 transferred to KH Enterprise in March 2023;

   iii. The cash withdrawals made by Kina/Ken Sanders from Safeway's accounts, which Kina admitted were for personal expenses;

      iv.   Personal expenditures reflected on Safeway's bank statements;

      v.   Payments of personal credit card debt reflected on the bank statements; and

      vi.   Any transfers to any other trucking entity in which Kina Sanders or Ken Sanders is an officer, director, member, or owner

h.   Preliminary enjoin Kina Sanders, Ken Sanders, or anyone acting on their behalf from creating any new corporate entities without Court permission until this litigation is concluded and require Kina Sanders and Kina Sanders to notify the Court of any such entities created subsequent to the filing of this Complaint.

i.   Require Safeway, Ken Sanders, Kina Sanders, and KH Enterprise to provide the Court with an inventory of all assets with a value in excess of $5,000.

### COUNT III: SUCCESSOR LIABILITY, DE FACTO MERGER,
### MERE CONTINUATION, CONTINUITY OF ENTERPRISE LIABILITY, AND FRAUD

84.    TSL incorporates by reference the allegations contained in the preceding paragraphs.

85.    Safeway and KH Enterprise share an identity of officers, directors, owners, managers, members, employees, customers, and independent contractors.

86.    Safeway and KH Enterprise have the same registered agent.

87.    Safeway and KH Enterprise have the same principal place of business.

88.    Safeway (prior to ceasing business) and KH Enterprise are in the same line of business – truck hauling.

89.    KH Enterprise's customers were Safeway's customers before Safeway ceased doing business.

90.    Ken Sanders told one of Safeway's/KH Enterprise's customers that Safeway was changing its name to KH Enterprise.

91.    Safeway and KH Enterprise have the same primary assets. On information and belief, KH Enterprise uses the same vehicles and equipment formerly used by Safeway.

92.    KH Enterprise inherited and benefitted from Safeway's business goodwill as reflected by the fact that KH Enterprise's customers used to be customers of Safeway.

93.    KH Enterprise holds itself out as one and the same entity as Safeway as demonstrated by the fact that Ken Sanders told Ashley Farm & Trucking that Safeway was changing its name to KH Enterprise.

94.    Pursuant to the factors, tests, and reasoning set forth in *Paradise Corp. v. Amerihost Dev., Inc.*, 848 So. 2d 177 (Miss. 2003) and other cases, KH Enterprise, Kina Sanders, and Ken Sanders are jointly and severally liable for Safeway's debts.

95.    Additionally, Kina and Ken Sanders, Safeway, and KH Enterprise are liable for punitive damages.

## COUNT IV: INDIVIDUAL LIABILITY OF KINA SANDERS AND KEN SANDERS: PIERCING THE CORPORATE VEIL, ALTER EGO, FRAUD, DIRECT PARTICIPATION IN WRONGS

96.    TSL incorporates by reference the allegations contained in the preceding paragraphs.

97.    Kina/Ken Sanders treated corporate assets as their personal assets. Kina/Ken withdrew thousands of dollars of cash from Safeway's accounts immediately before and after Safeway's bankruptcy filing for personal expenses; Kina/Ken used Safeway funds to pay thousands of dollars of personal credit card debts; and Kina/Ken used Safeway funds to pay for various other personal expenses, such as school tuition, personal car loans, vacations, $3,700 monthly home mortgage payments, personal insurance, dining out, and spa visits, among other expenditures.

98.    Safeway did not observe corporate formalities. Kina Sanders testified that Safeway did not maintain corporate minutes, bylaws, an operating agreement, or reliable records of its

finances, accounts receivable, or accounts payable. Safeway was unable to produce business records any normal business would maintain in response to the bankruptcy court's order granting TSL's motion for a 2004 examination.

99.  Kina/Ken Sanders received income from Safeway which should have been used to pay corporate debts. As previously noted, Kina/Ken converted tens of thousands of dollars of Safeway funds to personal uses instead of using those funds to pay Safeway's creditors. As such, Kina/Ken preferred themselves over other creditors, violating their fiduciary duties and committing fraud.

100.  As the facts recited above demonstrate, Kina/Ken Sanders have diverted corporate assets and abused the corporate form for their personal benefit.

101.  Kina/Ken Sanders directly participated in and directed the fraudulent activities described herein, and are therefore individually liable. .

102.  Kina/Ken frustrated TSL's contractual expectations by stripping Safeway of assets and its ability to repay its debts and by transferring Safeway's business and assets to KH Enterprise.

103.  Kina/Ken are individually liable to TSL in an amount equal to Safeway's debt to TSL.

104.  Kina/Ken are additionally liable for punitive damages.

## COUNT V: TORTIOUS INTERFERENCE WITH CONTRACT/INTENTIONAL INTERFERENCE WITH CONTRACT

105.  TSL incorporates by reference the allegations contained in the preceding paragraphs.

106.  Kina Sanders, Ken Sanders, and KH Enterprise maliciously interfered with TSL's contracts with Safeway by draining Safeway of funds and assets that could and should have been

used to pay TSL. But for the malicious interference by Kina Sanders, Ken Sanders, and KH Enterprise, Safeway would have had the funds and assets necessary to pay TSL that which it was owed under its contracts with Safeway.

107.    The acts of Kina, Ken, and KH Enterprise were willful, intentional, malicious, done in bad faith, calculated to cause harm to TSL, and done with the unlawful purpose of causing damage and loss, without right or justifiable cause, and the acts did, in fact, proximately cause damages to TSL.

108.    Accordingly, Kina, Ken, and Safeway are liable to TSL in an amount equal to Safeway's debt to TSL, and are liable for punitive damages.

**WHEREFORE, PREMISES CONSIDERED**, TSL respectfully requests that the Court enter a judgment in its favor and against Safeway, KH Enterprise, Kina Sanders, Ken Sanders, and any other John Doe individual or corporate defendant who participated in or facilitated the wrongs complained of herein, awarding TSL the following damages:

a. Indebtedness for the Leased Vehicles: $40,438.15, plus contractual late fees at the rate of 18% per annum from June 27, 2023.

b. Indebtedness for the Rented Vehicles: $49,844.52, plus contractual late fees at the rate of 18% per annum from June 27, 2023.

c. Indebtedness for Damages to the Vehicles: $60,314.31, plus contractual late fees at the rate of 18% per annum from June 27, 2023.

d. Costs and Fees to which TSL is Entitled Under the Master Lease and Commercial Rental Agreements.

e. Any Damages Awarded Against TSL or Any Settlements Paid by TSL in the California Lawsuit.

f. Punitive Damages

TSL additionally requests that the Court enter a judgment in its favor and against Safeway, Kina Sanders, Ken Sanders, KH Enterprise, and any other John Doe individual or corporate

04327560

defendant who participated in or facilitated the wrongs complained of herein, awarding TSL the relief requested in Counts II-V of the Complaint. TSL requests such other relief to which it is entitled.

RESPECTFULLY SUBMITTED on this the 27th day of June, 2023.

**TRI-STATE TRUCK CENTER, INC.
d/b/a TRI-STATE LEASING**

By: /s/ William D. Drinkwater
　　　One of Its Attorneys

OF COUNSEL:

William D. Drinkwater (MSB #103913)
wdrinkwater@brunini.com
Alston F. Ludwig, (MSB #103241)
aludwig@brunini.com
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
190 East Capitol Street, Suite 100 (39201)
Post Office Drawer 119
Jackson, Mississippi  39205
Telephone: (601) 948-3101
Facsimile:  (601) 960-6902

04327560

22