UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TRI-STATE TRUCK CENTER, INC. D/B/A                                    PLAINTIFF
TRI-STATE LEASING

V.                                          CIVIL ACTION NO. 3:23-CV-410-DPJ-ASH

SAFEWAY TRANSPORT, LLC; KH ENTERPRISE LLC;              DEFENDANTS
KINA SANDERS; KENYASCICUS SANDERS; AND KJS
TRANSPORTATION, INCORPORATED

REPORT AND RECOMMENDATION

Plaintiff Tri-State Truck Center, Inc. d/b/a Tri-State Leasing has filed a motion to reopen

the case, enforce the settlement agreement, and award it its attorneys' fees incurred in attempting

to collect settlement proceeds from Defendants Safeway Transport, LLC; KH Enterprise LLC;

Kina Sanders; Kenyascicus Sanders; and KJS Transportation, Incorporated. Mot. [177].

Defendants filed no response to the motion, and the time to do so under the local rules has now

expired. As explained below, the undersigned recommends that the Court grant Tri-State's

motion.

I.      Facts and Procedural History

Tri-State filed this breach-of-contract lawsuit arising from Defendants' failure to fulfill

their payment obligations under vehicle lease agreements with Tri-State in June 2023. On May

22, 2025, the undersigned held a settlement conference with the parties, at the conclusion of

which the case settled. The following day, United States District Judge Daniel P. Jordan III

entered an Order of Dismissal that dismissed the case with prejudice but provided that "[i]f any

party fails to comply with the terms of th[e] settlement agreed to by all parties, any aggrieved

party may reopen the case for enforcement of the settlement agreement." Order [176]. The Order

explained that "[t]he Court specifically retains jurisdiction to enforce the settlement agreement."

*Id.* It further provided that a party that successfully moves for enforcement of the agreement would be entitled to "all additional attorneys' fees and costs" from "the party failing to comply with the agreement." *Id.*

The terms of the parties' settlement were then memorialized in a Full and Final Confidentiality, Settlement, and Release Agreement.[1] Pursuant to the agreement, the parties executed an Agreed Consent Judgment "granting Plaintiff a judgment against Defendants in the amount of $225,000.00." Agreement [177-2] at 1. The parties agreed that Tri-State would "not submit the Agreed Consent Judgment to the Court for entry and enrollment unless Defendants Default (as that term is defined [in the agreement]) and such Default is not cured within seven (7) days of email notice from Plaintiff." *Id.* On the other hand, the agreement provided that if Defendants defaulted and failed to cure the default within seven days of "Defendants' receipt of email notice of such Default from Plaintiff, then Plaintiff may submit the Agreed Consent Judgment to the Court for entry and enrollment." *Id.* at 2.[2]

The agreement required Defendants, "jointly and severally," to pay Tri-State the total sum of $120,000.00 "with installment payments due on or before the following dates:"

| Due Date | Amount |
|---|---|
| July 7, 2025 | $50,000.00 |
| August 21, 2025 | $40,000.00 |
| October 6, 2025 | $10,000.00 |
| November 5, 2025 | $10,000.00 |

---

[1] The agreement provides that "a Party may publicly disclose the terms of this Agreement in any action to enforce this Agreement." Agreement [177-2] at 4.

[2] The agreement states that, in the event Tri-State decides to enroll the Agreed Consent Judgment, "[t]he amount of [the judgment] shall be reduced by any payments made by Defendants prior to an uncured Default." Agreement [177-2] at 1.

*Id.* at 1. And it explained that Defendants would be in default if they "fail[ed] to timely make any payment required" under the payment schedule. *Id.* at 2.

Defendants did not make the July 7 payment, so on July 8, Tri-State's counsel sent Ms. Sanders an email notifying her of Defendants' default.[3] On July 9, Mr. Sanders emailed Tri-State's counsel to "request an adjustment to [the] current payment plan." Emails [177-4] at 2. Mr. Sanders proposed to make $2,000.00 payments on July 25 and August 8, a $2,500.00 payment on August 22, and a $5,000.00 payment on August 29. *Id.* at 3. Via return email on July 10, Tri-State's counsel told Mr. Sanders that Tri-State

> will agree to forbear from enforcing the Settlement Agreement through August 29, 2025, if Defendants . . . timely make all of the following payments via certified funds: (1) July 11, 2025: $8,500; (2) July 25, 2025: $2,000; (3) August 8, 2025: $2,000; (4) August 22, 2025: $2,500; and (5) August 29, 2025: $5,000.

*Id.* at 1. Mr. Sanders responded and "[c]onfirmed" his agreement to these terms on behalf of all Defendants. *Id.* Defendants timely made the first two payments under the modified payment schedule, but they failed to make the August 8 payment, paid only $2,000 on August 22, and failed to make a payment on August 29. Defendants have thus paid only $12,500 of the $120,000 they agreed to pay Tri-State in the settlement agreement.

On December 17, Tri-State's counsel emailed the Sanderses and called their default to their attention. That email informed the Sanderses that if they did not cure their breach of the settlement agreement by December 24, Tri-State would "fil[e] a motion with the Court to enforce the settlement." Email [177-7]. This motion and Tri-State's verified memorandum brief followed. Tri-State has certified that it served a copy of its motion on the Sanderses, who are also the signatories for the entity-defendants. *See* Consent J. [177-1] at 2; Settlement Agmt. [177-2] at

---

[3] The email is addressed to "Mr. Sanders" but was sent to kinabanks@yahoo.com, which the Court assumes is an email address associated with Ms. Sanders. E-mails [177-4] at 1.

6. Tri-State also served a copy on counsel of record as of the date the case was closed for Mr. Sanders, KH Enterprise, LLC, and KJS Transportation, Inc.

II.    Analysis

Because the Court's dismissal order "contain[ed] language expressly retaining jurisdiction over the enforcement of the settlement agreement," it has jurisdiction to entertain Tri-State's motion. *Hotard v. Aegis Sec. Ins. Co.*, No. 23-6003, 2025 WL 50034, at *2 (E.D. La. Jan. 8, 2025) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382 (1994)). The Court "has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). In diversity cases, such as this, state law "governs the enforcement of settlements." *Lefevre v. Keaty*, 191 F.3d 596, 598 (5th Cir. 1999). Under Mississippi law, courts "will enforce the Agreement which the parties have made, absent any fraud, mistake, or overreaching." *McManus v. Howard*, 569 So. 2d 1213, 1215 (Miss. 1990).

There is no question that the parties entered into an enforceable agreement and Defendants have breached that agreement. Tri-State is entitled to enforce the agreement. The undersigned therefore recommends that the Court enter and enroll the Agreed Consent Judgment [177-1]. Tri-State also asks the Court to "order Defendants, jointly and severally, to immediately pay [it] $212,500.00," or, alternatively, "to immediately pay [it] the sum of $107,500.00, to be applied against the Agreed Consent Judgment." Mem. [178] at 5. The undersigned recommends that the Court order the former because that is express consequence the parties agreed would result if Defendants defaulted on their payment obligations. Settlement Agmt. [177-2] § 1; *see Vikas v. WSP, Ltd. v. Economy Mud Prods. Co.*, 23 F.4th 442 (5th Cir. 2022) (explaining that district court "may decide 'whether and under what terms' to enforce the settlement" (quoting

*Wise v. Wilkie*, 955 F.3d 430, 436 (5th Cir. 2020))). Defendants' default occurred at the latest

when they failed to pay $107,500.00 by November 5, 2025. Defendants did not timely cure their

default in accordance with the settlement agreement. Settlement Agmt. [177-2] § 1.[4]

Pursuant to the Court's dismissal order, Tri-State is also entitled to its reasonable fees

incurred in its efforts to enforce the agreement. Tri-State has submitted billing records and a

declaration supporting a request for $4,535 in attorneys' fees.

> In this circuit, courts apply a two-step method for determining a reasonable attorney's fee award. The court must first calculate the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." . . . . Though the lodestar is presumed reasonable, the court may enhance or decrease it based on the twelve *Johnson*[5] factors. "The court must provide 'a reasonably specific explanation for all aspects of a fee determination.'"

*Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016) (quoting *Jimenez v. Wood*

*County*, 621 F.3d 372, 379, 380 (5th Cir. 2010)) (additional citations omitted).

The billing records Tri-State submitted state that its attorney spent 11.5 hours attempting

to get Defendants to comply with the settlement agreement and a paralegal contributed 1 hour of

work. Having reviewed the billing records, the undersigned finds the amount of time billed on

the matter was reasonable with the exception of the billing entries on June 2 and 6, 2025, that

predate Defendants' default or requests for extension of the payment deadlines. This is a

reduction of .5 hours of attorney time and .5 hours of paralegal time. Counsel's hourly rate of

$380 is reasonable, as is the paralegal's rate of $165 per hour. *See* McCullough Decl. [177-9];

---

[4] Tri-State also points out that Defendants waived the right to cure their default when they obtained an extension of the payment deadline from Tri-State. Ex. 5 [177-5].

[5] *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974).

*Sec. & Exch. Comm'n v. Adams*, No. 3:18-CV-252-CWR-BWR, 2025 WL 2917761, at *1 (Oct. 14, 2025) (collecting cases addressing reasonable hourly billing rates).

The undersigned has also considered the *Johnson* factors:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 n.18 (5th Cir. 2006) (citing *Johnson*, 488 F.2d at 717–19).[6] The undersigned concludes that none of those factors require an adjustment to the lodestar amount and recommends that the Court award Tri-State $4,262.50 in attorneys' fees. The undersigned recommends that the attorneys' fees be added to the judgment, bringing the total judgment amount to $216,762.50.

III.    Conclusion and Recommendation

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, the undersigned recommends the Court grant Tri-State's motion and enter a judgment against Defendants, jointly and severally, ordering them to immediately pay Tri-State $212,500.00 (as the adjusted consent judgment amount) plus $4,262.50 (reasonable attorneys' fees) for a total judgment of $216,762.50.

---

[6] Tri-State also asks the Court to award it "any costs and fees [it] incurs subsequent to the filing of [its] motion in an effort to enforce the settlement agreement." Mem. [178] at 7. Should Tri-State incur additional costs and fees in the future, it will need to separately move for those costs and fees.

6

IV.    Notice of Right to Object

In accordance with Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1), any party, within fourteen days after being served a copy[7] of this report and recommendation, may serve and file written objections to the recommendations, with a copy to the United States District Judge, the Magistrate Judge, and the opposing party. The District Judge at the time may accept, reject, or modify, in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to the undersigned with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court for which there is no objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Services, L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted, this the 20th day of February, 2026.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE

---

[7] When a document is served by mail, the party is considered to have been served on the date the document is mailed by the Court. *See* Fed. R. Civ. P. 5(b)(2)(C).